**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **MICHAEL L. LEWIS** ) | **Case NO.: 1:13-CV-589** |
| **15216 Triskett Road** ) | |
| **Cleveland, Ohio 44111** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **JUDGE DONALD C. NUGENT** |
| **vs.** ) | |
| ) | |
| **CITY OF CLEVELAND** ) | |
| **601 Lakeside Avenue** ) | |
| **Cleveland, Ohio 44113** ) | |
| ) | |
| **and** ) | **FIRST AMENDED COMPLAINT** |
| ) | **(Jury Trial Endorsed Herein)** |
| **PATROLMAN KOCH,** ) | |
| **Badge No. 31** ) | |
| **City of Cleveland** ) | |
| **Division of Police** ) | |
| **1300 Ontario Street** ) | |
| **Cleveland, Ohio 44113** ) | |
| ) | |
| **and** ) | |
| ) | |
| **PATROLMAN TODD,** ) | |
| **Badge No. 1507** ) | |
| **City of Cleveland** ) | |
| **Division of Police** ) | |
| **1300 Ontario Street** ) | |
| **Cleveland, Ohio 44113** ) | |
| ) | |
| **and** ) | |
| ) | |
| **PATROLMAN LATESSA,** ) | |
| **Badge No. 2253** ) | |
| **City of Cleveland** ) | |
| **Division of Police** ) | |
| **1300 Ontario Street** ) | |
| **Cleveland, Ohio 44113** ) | |

-1-

**and**                                       )
                                              )
**PATROLMAN BRAIN D. KLUTH**                  )
**Badge No. 0574**                            )
**City of Cleveland**                         )
**Division of Police**                        )
**1300 Ontario Street**                       )
**Cleveland, Ohio 44113**                     )
                                              )
    **and**               )
                                              )
**SERGEANT AMAN GAMBLE**                      )
**Badge No. 1907**                            )
**City of Cleveland**                         )
**Division of Police**                        )
**1300 Ontario Street**                       )
**Cleveland, Ohio 44113**                     )
                                              )
    **and**               )
                                              )
**MICHAEL McGRATH**                           )
**Chief of Police**                           )
**City of Cleveland**                         )
**Division of Police**                        )
**1300 Ontario Street**                       )
**Cleveland, Ohio 44113**                     )
                                              )
    **Defendants.**        )

## JURISDICTION AND VENUE

1.      Plaintiff Michael L. Lewis brings this civil rights lawsuit pursuant to 42

U.S.C. § 1983 to redress the deprivation, by City of Cleveland Defendants under color

of state law, of rights secured to him under the Fourth and Fourteenth Amendments of

the United States Constitution and Part I, Section 4 of the Constitution of State of Ohio.

2.      This Court has original jurisdiction over Plaintiff's action under 28 U.S.C.

§§ 2000(e) and 1331, as a federal question, and under 28 U.S.C. § 1343 (3) and (4), as

a civil rights action brought pursuant to 42 U.S.C. §§ 1983, and the Fourth and

Fourteenth Amendments of the United States Constitution. To the extent declaratory

relief is sought, Plaintiff's claims are asserted pursuant to 28 U.S.C. §§ 2201 and 2202.

This Court has pendant jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. §§

1331 and 1343, and the doctrine of supplemental jurisdiction as codified at 28 U.S.C. §

1167.

3.      The Court has venue over the claims in the within action pursuant to 28

U.S.C. § 1391 and §1392, in that all parties reside or do business within the judicial

district and Plaintiff's claims for relief arose within this judicial district.

**PARTIES**

4.      Plaintiff Michael L. Lewis ("Plaintiff") is a U.S. citizen who began service as

a certified and licensed Ohio police officer of the Cleveland Clinic Foundation's

("CCF")[1] Police Department on or about August 18, 2008. Plaintff is a United States

citizen and resident of the City of Cleveland. Plaintiff was responsible for looking for and

dealing with security threats, investigating actual or perceived security threats, and

responding to emergency situations through the hospital.

5.      Defendant City of Cleveland is an Ohio municipal corporation and

governmental legal entity, whose Police Department and officers act under color of law

---

[1]      CCF and the Cleveland Clinic Police Department employ police officers, such as Plaintiff, pursuant to Ohio Revised Code Section § 4973.17 and in conjunction with an Agreement, attached hereto as **"Exhibit A"** between the Cleveland Clinic Foundation and the City of Cleveland, who are commissioned by the Secretary of State for the State of Ohio. Under Ohio law and the Ohio Secretary of State's commission, police officers employed by the Cleveland Clinic Foundation and the Cleveland Clinic Police Department  "severally possess and exercise the powers of, and [are] subject to the liabilities of, municipal policemen while discharging the duties for which they are appointed."(See, O.R.C. §4973.18 in conjunction with O.R.C. §4973.17).

for all purposes related to this case.

6.     Defendant Brian Kluth is employed as a Patrolman of the Cleveland Police Department, and he was acting under color of law.  Defendant Koch is being sued as an individual as well as in his official capacity. Defendant Koch is one of the primary arresting police officers in this case.

7.     Defendant Koch is employed as a Patrolman of the Cleveland Police Department, and he/she was acting under color of law.  Defendant Koch is being sued as an individual as well as in his/her official capacity. Defendant Koch is one of the primary arresting police officers in this case.

8.     Defendant Todd is employed as a Patrolman of the Cleveland Police Department, and he/she was acting under color of law.  Defendant Todd is being sued as an individual as well as in his/her official capacity. Defendant Koch is one of the primary arresting police officers in this case.

9.     Defendant Latessa is employed as a Patrolman of the Cleveland Police Department, and he/she was acting under color of law.  Defendant Latessa is being sued as an individual as well as in his/her official capacity. Defendant Latessa is one of the primary arresting police officers in this case.

10.     Defendant Aman Gamble is employed as a Sergeant of the Cleveland Police Department, and he was acting under color of law as the police supervisor for Defendant Patrolmen Kluth, Todd, Koch and Latessa on February 5, 2011.  Defendant Gamble is being sued as an individual as well as in his official capacity. Defendant Gamble is one of the primary arresting police officers in this case.

-4-

11.     Defendant Michael McGrath was and is employed by the Cleveland Police Department as the Chief of Police, and he was acting under color of law. Defendant McGrath is being sued in his official capacity as one of the final policy makers and supervisors for the Cleveland Police Department.

12.     At all times mentioned herein, all of the individual defendants were acting as agents, servants and/or employees of Defendant Cleveland, and they were acting under color of law and pursuant to their authority as police officers for Defendant City of Cleveland.

**STATEMENT OF THE FACTS**

13.     On February 6, 2011, at approximately 3:00 a.m., Plaintiff, a CCF police officer who is licensed and permitted to carry a fireman under state law, was at his Cleveland, Ohio, apartment with his friend, Jacqueline Cook ("Cook"), and he turned on a CD Player. Plaintiff and Cook then began to play cards and listened to jazz music.

14.     At that same time, Plaintiff was dressed causally and still had his CCF off duty weapon and CCF police officer badge on his person after working earlier that day. At no time was Plaintiff legally intoxicated or was using any illegal drugs that night.

15.     Later that same evening, Plaintiff received a knock on his apartment door. Before Plaintiff could even open his apartment door, Plaintiff's neighbor, Mary Bolton ("Bolton"), immediately shouted to Plaintiff, "Could you cut that damn music down!" from the hallway.

16.     As Plaintiff opened his apartment door, Bolton again loudly repeated her statement, "Could you cut that damn music down!" Not wanting any trouble, Plaintiff apologized to Bolton for the volume of the music coming from his apartment.

-5-

17.    After closing his apartment door, Plaintiff lowered the volume of his music player, as Bolton returned to her apartment. Plaintiff then told Cook about the loud noise complaint made by his neighbor. Thereafter, Bolton never again complained to Plaintiff's about the volume of his music for the remainder of that evening.

18.    After discussing his neighbor's concern with Cook, Plaintiff went to the restroom. While Plaintiff was in the restroom, Cook decided on her own that she wanted to go speak with Bolton about Plaintiff's music. As Plaintiff was leaving the restroom, he overheard Cook and Bolton loudly shouting at each other in the hallway outside his apartment door.

19.    Immediately, Plaintiff went into the hallway and attempted to defuse and calm down the conflict and arguing between the Cook and Bolton. After watching Cook and Bolton continue to argue and shout at each other, Plaintiff attempted to grab Cook by the arm, and pull her away from Bolton's apartment door. Plaintiff then stated to Cook, "Let's Go!" and asked her to return to his apartment. Cook and Bolton continued to shout unpleasantries at each other in the hallway as Plaintiff and Cook walked back toward his apartment.

20.    As Cook and Plaintiff were walking back toward his apartment, Bolton shouted the verbal threat: "I got something for your ass!" Bolton's son, Andre Mack ("Mack"), then shouted a loud threat to Plaintiff and Cook, but Plaintiff could not clearly understand the threat.

21.    Believing that the verbal threats being shouted by Mack and Bolton might escalate into a physical altercation between Bolton and Cook, Plaintiff advised both Bolton and Mack that he was an off-duty CCF Police Officer, and the he did not want

any trouble.

22.     As an offer of proof to his legal status as a state licensed law enforcement officer, Plaintiff reached for his identification to show Bolton and Mack his CCF police officer's badge, which was attached to his right hip area under his shirt. At do time did Plaintiff ever remove his fireman from his holster or "brandish" it in front of Bolton and Mack in a threatening manner.

23.     After returning to his apartment, Plaintiff tried to calm down Cook, who was still quite excited, angry and agitated after her verbal confrontation with Bolton and Mack in the hallway. After Cook finally calmed down, both Plaintiff and Cook continued to talk, listen to music and play cards without incident in the apartment.

24.     As Plaintiff and Cook were playing cards and talking, Defendant CPD Police Officers Kluth, Koch, Todd  and Latessa came to his apartment and knocked on the door. After hearing the knock and opening the door, Plaintiff and Cook were immediately detained, placed against a wall and searched by Defendant CPD Police Officers without probable cause.

25.     Plaintiff tried to identify himself as a fellow police officer and told Defendant CPD Police Officers about his CCF identification and badge. After Defendant Officers learned of Plaintiff's legal status as a police officer, Plaintiff was still detained, arrested, handcuffed and placed on his couch without explanation in spite of the fact that Defendant Officers never witnessed or observed Plaintiff commit any criminal offense. Defendant CPD Police Officers also did not find, obtain or gather any evidence that Plaintiff committed any criminal offense.

26.     When Plaintiff asked Defendant Officers why he was being placed under arrest, Plaintiff did not receive any response from any of the CPD police officers. Defendant CPD Police Officers were tentative, uncertain and intentionally vague about the reasons why Plaintiff was being placed under arrest and handcuffed in the apartment. While being detained and handcuffed on his couch, Plaintiff remained quiet and cooperative with Defendant CPD Police Officers, and he spoke to them in a cooperative, peaceful and friendly tone.

27.      After being handcuffed, Plaintiff complained to Defendant CPD Police Officers about how tight the handcuffs were and how they were hurting and cutting into hid wrist. Plaintiff politely asked Defendant CPD Police Officers to loosen the handcuffs to relieve the pain and pressure on his wrist and shoulder. Defendant CPD Police Officers refused to loosen the tightness of the handcuffs, and they told Plaintiff that he did not have that far to travel to get jail.

28.     Approximately 45 minutes after being arrested and handcuffed by Defendant CPD Police Officers, CPD Defendant Sergeant Gamble arrived at Plaintiff's apartment. When Plaintiff asked Defendant Sergeant Gamble why he was under arrest and what crime he was being charged with, CPD Defendant Sergeant Gamble told Plaintiff that, "I'll think of something!"

29.     Plaintiff was shocked and surprised by Defendant Sergeant Gamble's attitude toward him as a fellow police officer because he still did not understand why he was being placed under arrest and handcuffed in his apartment.

30.     Before Plaintiff was transported to the CPD District Police Station by Defendant Police Officers, Plaintiff's friend and guest, Cook, who also was in handcuffs,

informed CPD Defendant Sergeant Gamble that she was married to a fellow CPD

Police Officer. CPD Defendant Sergeant Gamble decided that Cook should be

immediately released at the scene and she was allowed to leave Plaintiff's apartment

without incident.

31.    While still handcuffed on the couch, Plaintiff was never told why he was

under arrest by any of CPD Defendant Police Officers. Plaintiff  was finally taken to a

CPD police cruiser and placed in the back seat. Plaintiff again complained to CPD

Defendant Police Officers about how the handcuffs were hurting his wrists, but the CPD

Police Officers refused to do anything about it.

32.    After being transported to the Fifth District Station by CPD Defendant

Police Officers, Plaintiff was booked, processed and placed in the general population of

other arrestees in city jail.

33.    On February 6, 2011, while still sitting in city jail, CPD Fifth District

Detective Stephen A. McGraw, ("Detective McGraw") was assigned to investigate the

facts of Plaintiff's arrest. Detective McGraw came to the jail to interview Plaintiff.

Detective McGraw read Plaintiff his Miranda rights and then asked Plaintiff whether he

wanted to give a voluntary statement without counsel. Plaintiff told Detective McGraw

that he understood his rights and wanted to voluntarily give a statement, and Plaintiff

immediately cooperate with Detective McGraw's investigation.

34.    After giving a voluntary statement to Detective McGraw, Plaintiff was told

by the CPD Detective that he did not believe the statements of Bolton and Mack, and

that he would try to get Plaintiff released from jail as soon as possible.

35.     On February 7, 2011, Plaintiff still remained in city jail without a hearing without explanation.

36.     On February 8, 2011, Detective McGraw met with an Assistant City of Cleveland Prosecutor to discuss the circumstances of Plaintiff's arrest. CPD Detective McGraw told the Prosecutor that he interviewed Bolton, and that he learned that there was insufficient evidence of Plaintiff being intoxicated and mishandling a weapon. Detective McGraw informed CCF's chief of detective of his investigation and written findings surrounding the arrest of Plaintiff. (See, copy of CPD Detective McGraw's Police Report attached hereto as **"Exhibit B"**).

37.     Plaintiff was never charged with any alcohol, weapon or menacing related criminal charges because CPD Detective McGraw revealed that Bolton was lying about the events of February 6, 2012, and that there was insufficient evidence to charge Plaintiff with serious criminal offenses. Indeed, while Plaintiff was still in jail, CPD Detective McGraw told Plaintiff that he believed Bolton lied about the events that lead up to his arrest on February 6, 2011.

38.     On February 8, 2011, Plaintiff was only formally charged with a local misdemeanor of unnecessary noise. After an appearance in municipal court for this misdemeanor charge, Plaintiff was released from jail after being imprisoned for more than 48 hours without legal justification or probable cause.

39.      In direct violation of CPD General Police Order 2.3.04, "Release of Suspects - Judicial Determination of No Probable Cause," a copy of which is attached hereto as **"Exhibit C,"** Plaintiff was unreasonably held in city jail for more than 48 hours

-10-

without a judicial probable cause hearing for the purpose of CPD gathering additional evidence to justify an unjust arrest and unlawful detention because CPD Defendant Police Officers had no objective probable cause to arrest, handcuff, and imprison Plaintiff on February 6, 2011.

40.     On or about February 15, 2011, Plaintiff had his weapon returned to him by the CPD without incident.

## CAUSES OF ACTION

## COUNT I

## 42 U.S.C. § 1983: False Arrest/Unlawful Detention/False Imprisonment

41.     Plaintiff re-alleges and incorporates paragraphs 1-40 as fully stated herein.

42.     The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

43.     The arrest and charges in February 2011 were not based on probable cause, that is, the state of facts in minds of the Government would not lead a reasonable person to believe, or entertain an honest or strong suspicion that Plaint was guilty of a crime.

44.     Plaintiff had a constitutional right to be free from detention, arrest and imprisonment where the circumstances and facts under CPD DEFENDANT POLICE OFFICERS' consideration at the time of the seizure demonstrated that these officers

lacked objective probable cause and sufficient evidence to detain, arrest and imprison Plaintiff for allegedly using a fireman while intoxicated or any other serious criminal offense.

45.    Plaintiff provided CPD DEFENDANT OFFICERS with all the necessary exculpatory information, including his CCF police badge and identification, they needed in order to conclude that he was lawfully permitted to posses, handle and carry a fireman as a trained, certified and licensed police officer for CCF. However, CPD DEFENDANT OFFICERS ignored Plaintiff's information and still detained, arrested and imprisonment him without objective probable cause.

46.    CPD DEFENDANT OFFICERS knew or should have known that the detention and imprisonment of Plaintiff for more than 48 hours without a judicial hearing constituted an unlawful detention and imprisonment in violation of the Fourteenth Amendment of the United States Constitution.

47.    As described above, CPD DEFENDANT OFFICERS falsely arrested and unlawfully detained and imprisoned Plaintiff, who was a state certified  police officer, without justification and without objective probable cause on February 6, 2011 based on false information, fabricated statements and insufficient evidence obtained by the CPD DEFENDANT POLICE OFFICERS.

48.    The misconduct described in this Count, which included deliberate delay in Plaintiff's presentment to a neutral magistrate in court so that CPD DEFENDANT OFFICERS could justify the detention, arrest and investigation of other possible offenses,  was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff under the Fourth Amendment.

49.     As a direct result of the above-described wrongful infringement of Plaintiff's constitutional rights, Plaintiff  suffered damages, including but not limited to mental distress, anguish and his employment as a CCF police officer.

## COUNT II

### 42 U.S.C. § 1983: Excessive Force

50.      Plaintiff re-alleges and incorporates paragraphs 1-49 as fully stated herein.

51.      The actions and/or the failure to intervene to prevent physical harm or injury to Plaintiff after he was handcuffed by CPD DEFENDANT OFFICERS amounted to an excessive use of force onto Plaintiff.

52.      This conduct violated the Fourth Amendment of the United States Constitution and CPD police policy regarding the proper use handcuffs and detention of an arrestee when he complains of how the handcuffs were hurting him.

53.      The aforementioned actions of the CPD DEFENDANT POLICE OFFICERS were the direct and proximate cause of the violations set forth above.

## COUNT III

### 42 U.S.C. § 1983: Supervisory Liability

54.     Plaintiff re-alleges and incorporates paragraphs 1-53 as fully stated herein.

55.     The ranking police officer, Defendant Gamble, had a duty to supervise, train, control, oversee and discipline his subordinate officers in proper and lawful police procedures. As a sergeant with ranking and supervisory responsibilities, Defendant Gamble breached this duty by either being present at the scene of Plaintiff's arrest, or

involved in the decision to arrest Plaintiff without probable cause, and by failing to control or prevent his subordinate police officers from engaging in illegal and statutory and unconstitutional acts against Plaintiff, a fellow police officer.

56.    On the days in question, Defendant Gamble had actual knowledge that a number of his subordinate police officers detained and then falsely arrested Plaintiff without probable cause and should have known that such conduct posed a pervasive and unreasonable risk, that U.S. citizens, like Plaintiff, would have their statutory and constitutional rights violated.

57.    Defendant Gamble, in conscious disregard to this risk, did instruct other police officers under his supervision to conduct an unreasonable arrest, detention and seizure of property without probable cause, actions which were unreasonable, illegal and violated General Police Orders of the Cleveland Police Department.

58.    The conduct described in this Count was undertaken by the CPD DEFENDANT POLICE OFFICERS under the color of law and within the scope of their employment such that their employer, the City of Cleveland, is liable for their actions.

**COUNT IV**

**42 U.S.C. § 1983: Unlawful Search and Seizure of Property**

59.    Plaintiff re-alleges and incorporates paragraphs 1-58 above as fully stated herein.

60.    The CPD DEFENDANT POLICE OFFICERS observed no criminal activity being committed by Plaintiff, but they still searched and seized Plaintiff's home, personal and CCF police property without legal justification and probable cause.

-14-

61.     The aforementioned acts of the CPD DEFENDANT POLICE OFFICERS were a direct and proximate cause of the violations of the United States Constitution as an unreasonable search and seizure under the Fourth Amendment.

**COUNT V**

**42 U.S.C. § 1983: Failure To Intercede/Intervene**

62.     Plaintiff re-alleges and incorporates paragraphs 1-61 above as fully stated herein.

63.     CPD Defendant Sergeant Gamble, who came to Plaintiff's apartment on February 6, 2011, had an affirmative duty as a supervisor to intercede and/or intervene on behalf of a citizen and fellow police officer, like Plaintiff, whose statutory and constitutional rights were being violated in his presence by fellow police officers who were acting under color of law.

64.     On the date in question, CPD Defendant Sergeant Gamble breached this duty by being present at the scene of the arrest of Plaintiff, and failing to control or prevent fellow CPD police officers under his supervision from engaging in unreasonable statutory and unconstitutional acts.

65.     CPD Defendant Sergeant Gamble knew or should have known that the conducting of a search, seizure, arrest, detention and imprisonment and of a citizen and fellow licenced police officer, like Plaintiff, without probable cause was unreasonable, unlawful and unconstitutional.

66.      As a direct and proximate result of the acts and omissions of CPD Defendant Sergeant Gamble, Plaintiff has suffered injuries and damages.

## COUNT VI

**42 U.S.C. § 1983:   Municipal Policy, Custom or Practice and Municipal Liability - Failure To Train and Supervise Police Officers In Proper Arrest, Detention, Release of Suspects and Judicial Determination Of No Probable Cause**

67.     Plaintiff re-alleges and incorporates paragraphs 1-66 above as fully stated herein.

68.     The arrest, detention and prolong imprisonment of Plaintiff by the CPD Defendants was unlawful and unsupported by any objective probable cause or credible evidence, and they demonstrated that their municipal actions were taken with "deliberate indifference" as to the known or obvious consequences of those actions.

69.     Defendant McGrath, as the final policymaker of the Cleveland Police Department, failed to adequately train his police officers in the proper conduct and scope of warrantless arrest, detention of citizens for more than 48 hours without any judicial determination of probable cause and release of suspects who have not committed a crime.

70.     Defendant City of Cleveland's failure to train its police officers had a highly predictable consequence of constitutional violations of the sort suffered by Plaintiff.

71.     The police officers in question, by and through the custom, policy or practice (unwritten) as set by Defendant City of Cleveland have each acted intentionally, recklessly, and with deliberate indifference to the statutory and constitutional rights of Plaintiff. The policies, customs and practices of the City of Cleveland and the Police Department, as authorized and sanctioned by City of Cleveland, were the moving forces behind the statutory and constitutional violations

-16-

suffered by Plaintiff.

72.     The supervising police officer and other patrolmen, by and through the custom, policy or practice (whether written or unwritten) as set by Defendants McGrath and City of Cleveland, have each acted intentionally, recklessly, and with deliberate indifference to the statutory and constitutional rights of Plaintiff. The policies, customs and practices of the City of Cleveland and the Police Department, as authorized and sanctioned by City of Cleveland, were the moving forces behind the statutory and constitutional violations suffered by Plaintiff.

73.     Although their policymakers, such Defendant McGrath, were on notice of the obvious need to properly train and supervise police in these areas, the City of Cleveland systematically failed to train, monitor and supervise the individual police officers involved in the warrantless arrest, unlawful detention, seizure and imprisonment without probable cause regarding Plaintiff.  As such, Defendant City of Cleveland was deliberately indifferent to the rights of citizens subject to arrest and detention, including Plaintiff.

**COUNT VII**

**42 U.S.C. § 1983 – Municipal Liability for Failure to Investigate and Discipline Police Officer/Ratification**

74.     The allegations set forth in paragraphs 1 through 73 of the complaint are incorporated herein by reference.

75.     The violations of Plaintiff's constitutional rights enumerated herein were at the same time or alternatively the result of a custom and/or policy of Defendant City of

Cleveland, and its Police Department, wherein the said Defendants City of Cleveland and McGrath failed to investigate the illegal practices and wrongful conduct of police officers, which unlawfully arrested and detained Plaintiff without a warrant, probable cause or credible evidence.

76.    The violations of Plaintiff's constitutional rights enumerated herein were at the same time or alternatively the result of a custom, practice and/or policy of Defendant City of Cleveland, and its Police Department, wherein the said Defendants City of Cleveland and McGrath failed to correct, reprimand, discipline and/or terminate the wrongful conduct of the police officers involved in the arrest, prolong detention, imprisonment and seizure of Plaintiff without a search warrant, probable cause or credible evidence.

77.    In direct violation of CPD General Police Orders and CPD policy, the acquiescence of Defendants City of Cleveland and McGrath in failing to investigate and discipline Defendants Koch, Todd, Latessa, Kluth and Gamble for their wrongful acts constitute ratification of illegal actions of these current employee officers in this action.

78.    In direct violation of the law, Defendants City of Cleveland and McGrath ratified the wrongful actions of Defendants Koch, Todd, Latessa, Kluth and Gamble which directly resulted in unlawful arrest, prolong detention and imprisonment of Plaintiff without probable cause.

79.    As a direct and proximate result of the acts and omissions of Defendant City of Cleveland, Plaintiff suffered foreseeable and preventable injuries and damages.

-18-

**COUNT VIII**

**State Law Claim:    Intentional Infliction of Emotional Distress**

80.    Plaintiff re-alleges and incorporates paragraphs 1-79 above as fully stated herein.

81.    The acts and conduct of CPD DEFENDANT OFFICERS as set forth above were extreme and outrageous. CPD DEFENDANT OFFICERS intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to plaintiff.

82.    CPD DEFENDANT OFFICERS' actions and conduct did directly and proximately cause a severe emotional distress to Plaintiff and thereby constituted intentional infliction of emotional distress.

84.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

85.    The misconduct described in this Count was undertaken by the CPD DEFENDANT OFFICERS within the scope of their employment such that their employer, City of Cleveland, is liable for their actions.

**COUNT IX**

**State Law Claim: False Imprisonment**

86.    Plaintiff re-alleges and incorporates paragraphs 1- 85 above as fully stated herein.

87.    Under Ohio law, false imprisonment occurs when a person confines another intentionally without lawful privilege and against his consent within a limited

area for any appreciable time, however short.

       88.    At the time Plaintiff was locked up and imprisoned on or about February 5, 2011, CPD DEFENDANT OFFICERS KLUTH, KOCH, TODD, LATESSA AND GAMBLE knew or should have known that they lacked reasonable grounds and probable cause to believe that Plaintiff committed any criminal offense that would subject Plaintiff, a fellow police officer, to incarceration for more than 48 hours without appearing before a magistrate.

       89.    The conduct of CPD DEFENDANT OFFICERS KLUTH, KOCH, TODD, LATESSA AND GAMBLE of imprisoning Plaintiff in the general population of other non-law enforcement arrestees described above was willful and wanton and actuated with malice.

90.     As a direct and proximate result of the false imprisonment, Plaintiff has suffered and continues to suffer injuries, including physical and emotional suffering and humiliation, lost wages, employment and injury to reputation.

### REQUEST FOR RELIEF

91.     Plaintiff MICHAEL L. LEWIS respectfully requests that this Court:

> After judgment in his favor and against Defendants, CITY OF CLEVELAND and CPD POLICE OFFICERS KLUTH, TODD, KOCH, LATESSA and GAMBLE;

> Award compensatory damages against CPD POLICE OFFICERS KUTH, KOCH, TODD, LATESSA and GAMBLE;

> Award legal fees against defendants;

> Award punitive damages against CPD POLICE OFFICERS KLUTH TODD, KOCH LATESSA and GAMBLE in their individual capacities;

### JURY DEMAND

Plaintiff, MICHAEL L. LEWIS, demand a trial by jury under the Federal  Rules of Civil Procedure on all issues so triable.

Respectfully submitted,


/s/Sylvester Summers, Jr.

Sylvester Summers, Jr. (0042482)

Sylvester Summers, Jr. Co., L.P.A.
7804 Linwood Avenue
Cleveland, Ohio 44103
(216) 298-1589 (work)
(216) 407-6773 (Cell)
Slyatlaw@msn.com (Email)

Attorney for Plaintiff Michael L. Lewis


-21-