IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LEWIS, ) | CASE NO. 1:13 CV 589 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| CITY OF CLEVELAND, *et al.*, ) | |
| ) | |
| Defendants. ) | <u>MEMORANDUM OPINION</u> |

This matter is before the Court on Defendants, Jennifer Hernandez's, Dorothy Todd's, Matrina Latesa's, Brian Kluth's, and Aman Gamble's Motion for Summary Judgment. (ECF #65). Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgment, which included a request that the Court reconsider its prior dismissal of Counts III, VI, and VII of the Amended Complaint. (ECF #70). The remaining Defendants also filed a Reply in support of their motion for summary judgment. (ECF #74). Having considered all of the submissions, and having reviewed the undisputed facts and applicable law, this Court finds that Defendants' Motion for Summary Judgment should be GRANTED.

**Facts and Procedural History**[1]

Plaintiff filed a Complaint in the Cuyahoga County Common Pleas Court against the City of Cleveland and several individual officers in the Cleveland Police Department alleging various civil rights violations. Defendant, City of Cleveland removed the case to Federal Court. Plaintiff then filed an Amended Complaint adding Michael McGrath, Chief of Police as a Defendant. (ECF #7). The city of Cleveland filed a motion to dismiss the claims against it. (ECF # 10). The Court granted the City's motion, dismissing Counts III, VI, and VII of the Complaint, which were the only counts naming the City as a Defendant. (ECF # 19). Subsequently, Chief McGrath filed his own motion to dismiss, and the Court granted that motion, dismissing Chief McGrath from the case. (ECF # 27, 32). The remaining claims in the First Amended Complaint are: (1) False Arrest/Unlawful Detention/False Imprisonment in violation of 42 U.S.C. § 1983, against the individual police officers; (2) Excessive Force in violation of 42 U.S.C. § 1983, against the individual police officers; (3) Unlawful Search and Seizure of Property in violation of 42 U.S.C. § 1983 against the individual police officers; (4) Failure to Intercede/Intervene in violation of 42 U.S.C. § 1983 against Defendant Sergeant Gamble; (5) Intentional Infliction of Emotional Distress against the individual officers, and (6) state law False Imprisonment against the individual officers.[2] The case is now before the Court

---

[1] Except as otherwise cited, the factual summary is based on the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

[2] The Defendants also asked for summary judgment on Count III as it applies to Defendant, Sergeant Gamble. The Court previously found, however, that Count III was alleged only against the City of Cleveland and it was dismissed in full. (ECF #19).

on a Summary Judgment motion filed by the remaining individual defendants. (ECF #70).

The undisputed facts underlying this cause of action are as follows. In the early morning hours of February 6, 2011, Cleveland police received a complaint of a loud party and the smell of marijuana. Shortly thereafter, the complainant called again saying that her neighbor (Mr. Lewis) came to her door with a gun and threatened her. Officers Kluth and Koch (Hernandez) responded to the call and interviewed the complainant. The witnesses reported that they were disturbed by loud music coming from Mr. Lewis' apartment. When they asked him to turn down the music, they allege that he told them to "get out of here," and slammed the door." They reported that a few minutes later a woman (Jacquelyn Cook) banged on their door and when they opened it, she put her foot in the doorway so they couldn't close the door. They alleged that parties all then stepped in the hallway and continued arguing until Mr. Lewis approached, pointing a handgun down at the ground and saying "I'm gonna start firting [sic] up around here." At that point, the witnesses claim they feared for their safety and returned to their apartment and called police a second time." Dispatch records confirm "Another call state nieghbor [sic] came to her door to with a FM with a gun and threatened her." During their interview with the responding officers, the witnesses appeared to be frightened and angry. Although the witnesses' characterization of the events is disputed by Mr. Lewis, he does not dispute that he was asked to turn his music down; that Ms. Cook returned to confront the witnesses for requesting that the music be turned down; or that he approached the witnesses and Ms. Cook in the hallway while having a gun on his person. Mr. Lewis also could not dispute that the witnesses may have seen his gun, though he claims he did not brandish it or otherwise threaten them. Most importantly, Mr. Lewis does not dispute that the witnesses and dispatch gave the above account to the

responding officers or that this is the only information they were aware of before knocking on his apartment door.

The parties agree that the responding officers then went to Mr. Lewis's apartment and knocked on his door. According to Plaintiff, they identified themselves as police and he voluntarily opened the door. He claims they then immediately grabbed him, took his gun, and handcuffed him. He does not dispute the he was carrying a gun that may have been visible when he opened the door. Once he was handcuffed he was allowed to find his wallet to show identification to the officers and then they sat with him in his living area until the OIC[3] arrived. Mr. Lewis claims that officers never told him why they had handcuffed him or arrested him. The officers testified that they told both Mr. Lewis and Ms. Cook that a lady down the hall claimed Mr. Lewis had drawn his weapon. Ms. Cook's testimony corroborates the officer's testimony on this issue and states that she and Mr. Lewis denied that this occurred. When the OIC, Officer Gamble, arrived he instructed the officers on scene to let Ms. Cook leave and to take Mr. Lewis in on charges. Ms. Lewis claims that he was never told what charges he was being arrested for.

Mr. Lewis admits that when the officers were in his apartment, his eyes may have been bloodshot; that there was an unopened beer on the dining room table; and, that there were various empty alcohol containers in the apartment. He admits that he had a couple of drinks the previous day and was about to have a drink when the officers came it, but claims that he had not actually had a drink in about fifteen hours or so, since he arrived home from work round 11:30am or so the day before.

---

[3] Although the parties do not define what OIC stands for, based on the context of this case, the Court presumes this to mean "officer in charge."

Mr. Lewis was taken to the jail around 5:20 am on the morning of February 6, 2011. The incident report indicates that he was arrested for aggravated menacing and having weapons while under disability. He was booked and held until late morning on February 9, 2011 when he was arraigned and released on personal bond. Neither side has produced evidence to show the charges that were addressed at his arraignment. In the end, Mr. Lewis pled guilty to a ticket for a minor misdemeanor noise violation.

**Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56©). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for

summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **Analysis**

### I. **Federal Claims**

#### A. Qualified Immunity

The individual officers in this case argue that they are entitled to qualified immunity on Plaintiff's federal claims. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, at 526 (1985). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, at 231 (2009)(internal citations omitted).

Qualified immunity under federal law is applied using a two part test. Id. First, courts must determine whether the alleged acts violate a constitutional right. Second, the court must determine whether at the time of the actions, the constitutional right is "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). The determination must be based on what an reasonable officer would believe or understand under the circumstances given what was known to the officer. *Fox v. DiSoto*, 489 F.3d 227 at 236 (6th Cir. 2007). The standard is objective, and must not be applied using hindsight unavailable to the officers at the time the action were taken. *Id.*

B.  False Arrest/Unlawful Detention/False Imprisonment in violation of 42 U.S.C. § 1983

The Plaintiff's federal claims are all based on the allegation that he was arrested without probable cause. There is no dispute that the Plaintiff was arrested without the issuance of a warrant. The Constitution allows a police officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed, is committing an offense, or is about to commit a an offense. *Dietrich v. Borrows*, 167 F. 3d 1007 (6th Cir. 1999). Probable cause to arrest requires "only the probability, and not a prima facie showing of criminal activity." *Illinois v. Gates*, 464 U.S. 213, 235 (1983). Probable cause is an objective standard and is not reliant on the actual intent or belief of the officer, himself.[4] Probable cause exists when there are sufficient facts "to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Painter v. Robertson*, 185 F. 3d 557, 569 (6th Cir. 1999).

Plaintiff contends that the arrest should be invalidated because Ohio law disallows a warrantless arrest for minor criminal offenses such as a noise violation. In the same argument, Plaintiff argues that although he eventually pled guilty to a noise violation this was never stated as the basis for his arrest. The incident report indicates that Mr. Lewis was being arrested for aggravated menacing and having a weapon under disability, not simply for a noise violation. The fact that he was not ultimately charged with or convicted of these offenses does not invalidate his

---

[4] Because the standard is an objective one, the allegation that Officer Gamble said he didn't know what Mr. Lewis was being charged with but he'll "think of something," is actually irrelevant to the analysis in this case. The question is not whether Officer Gamble believed he had probable cause, or even cared whether he had probable cause, the question is whether a reasonable prudent or cautious officer, knowing what these officers knew at the time could have reasonably believed that Mr. Lewis had committed, was committing, or was about to commit a crime.

arrest if there was probable cause based on the information then available to the officers to support his arrest on those two charges.  Further, if his arrest was based on the noise violation he eventually pled guilty to, the U.S. Supreme Court has held that an officer may make an arrest based on probable cause that the offender committed a minor criminal offense without offending the United States Constitution.  *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001).  This is true even if the arrest may be prohibited by state law.  *Virginia v. Moore*, 553 U.S. 164, Syllabus (2008).  A warrantless arrest, based on probable cause, even for a minor offense, would therefore be valid under federal law, or at the very least be protected by qualified immunity as there is no clear established federal law stating that it would constitute a constitutional violation.

In this case, the officers clearly had probable cause to arrest Mr. Lewis on the aggravated menacing charge.  The officers were dispatched to the scene on a report of a man threatening his neighbors with a gun.  Before going to Mr. Lewis' apartment, the officers interviewed the complaining witnesses and were told that Mr. Lewis approached them with drawn weapon and threatened them.  There appeared to be both frightened and angry.  Mr. Lewis was armed when he answered to door after the officers knocked.  Given the facts presented to them by complaining witnesses, and the fact that Mr. Lewis was armed when he answered the door, it was reasonable for the officers to conclude that Mr. Lewis had probably been involved in the alleged criminal activity.  Mr. Lewis' protestations of innocence are irrelevant to the determination of probably cause.  Probable cause does not require absolute proof of guilt, and does not require the police officer to accept as true a suspects version of the events.   Under the facts available to them at the time, the officers had probable cause to believe that Mr. Lewis had threatened his neighbors while in

possession of a gun. Thus, the arrest was valid.[5]

Plaintiff argues that there was no evidence that Mr. Lewis posed a risk of danger to the police or others. This is untrue. The officers had statements from two apparently frightened witnesses who said Mr. Lewis had threatened them with a gun in retaliation for them complaining about his music being too loud. Now he knew that they had called the police on him asserting much more serious charges. Further, when police arrived he was armed just as the witnesses had reported. Whether the witnesses apparent fear was justified, or even real, and whether their statements were found to be credible or accurate after later investigation, is not germane to the analysis. Eyewitness statements will constitute probable cause unless at the time of the arrest there is some apparent reason for the officer to disbelieve them. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th cir. 1999). At the time, this information provided by the witnesses constituted sufficient evidence to allow a reasonably prudent officer to believe that a crime had been committed by Mr. Lewis.

Plaintiffs also argue that officers were required to consider exculpatory evidence in making their determination of probable cause. The only "exculpatory" evidence cited that would invalidate a finding of probably cause on the aggravated menacing charge were the statements of Mr. Lewis and Ms. Cook and a lack of odor of marijuana. The lack of marijuana odor has no relation to the charge of aggravating menacing. There is no evidence that the witnesses told the officers that Mr. Lewis smelled of marijuana at the time of the alleged threat.[6] There is also no indication that Mr.

---

[5] Although there may be some question as to whether the facts known to the officers were sufficient to create probable cause for the charge of having a weapon under disability, they did not need probable cause on both charges in order to effectuate the arrest.

[6] There is some indication that when the witness first called in to report a noise violation

-11-

Lewis was charged with anything that would require a finding that he had smoked marijuana. Further, as stated above, officers do not have to accept a defendant's denial of culpability when determining whether there was probable cause to arrest. In this case both Mr. Lewis and Ms. Cook were potential defendants and had at the time of their statements already been accused of a crime. The fact that they disavowed the witnesses account of the events is neither surprising nor sufficiently exculpatory to negate a finding of probable cause.

There was no Fourth Amendment violation because there was probable cause for an arrest. Further, there was no Fifth Amendment violation articulated. Procedural due process in connection with the arrest has been satisfied because the arrest was made with probable cause. Mr. Lewis makes no other allegation that would support a finding of a due process violation, either procedural or substantive. As there was no constitutional violation in the arrest of Mr. Lewis, the officers are entitled to qualified immunity for any mistakes of law or fact that may have played into the decision to arrest Mr. Lewis.

To the extent that Mr. Lewis' claims for false imprisonment and unlawful detention stem from his claim that he was arrested without probable cause, they fail for the same reasons set forth above. To the extent that they may stem from his allegation that he was held in excess of forty-eight hours without an arraignment in violation of *Atwater*, 532 U.S. at 352, he has failed to present any evidence that this alleged violation was perpetrated by the named officers in his Complaint. The undisputed evidence provided by the Defendants is that none of the named officers had any control or authority over when Mr. Lewis was arraigned or released from jail. Their potential liability

---

she also indicated she had smelled marijuana. This was not relayed in the dispatch to the officers regarding the alleged threat, nor is there any evidence that the witnesses made this claim to officers when they were interviewed in person.

extended only to the point of incarceration. Officer Kluth testified that the "Court sergeant" would have been the responsible party, however, neither the "Court sergeant," nor any other individual responsible for arraignments and/or release orders, was named in the First Amended Complaint. Therefore, for all of the reasons set forth above, the Court finds that the individual officers named in the First Amended Complaint are entitled to qualified immunity on Mr. Lewis's claims for False Arrest, Unlawful Detention and False Imprisonment. Further, even qualified immunity did not protect the officers, there is no evidence to support Mr. Lewis' claims.

### C. Excessive Force in violation of 42 U.S.C. § 1983

The United State Supreme Court has determined that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment to the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

The Fourth Amendment is applicable to the states and their subdivisions by the Fourteenth Amendment.

Although the First Amended Complaint purports to state a claim for excessive force based on the tightness of the handcuffs placed on Mr. Lewis during his arrest, Plaintiff has conceded that he cannot meet the injury requirements for such a claim. Although tight handcuffing can be the basis

for an excessive force claim, in order to survive summary judgment on such a claim a plaintiff must provide evidence the he experienced some physical injury resulting from the handcuffing. *Fettes V. Hendershot*, 375 Fed.Appx. 528, 533 (6th Cir. 2010). Plaintiff has admitted that he suffered no such injury. Rather, he now claims that his excessive force claim is based solely on the amount of force required to place him under arrest. He does not claim that the force was excessive to accomplish that goal, but claims that because his arrest was unjustified, so was the accompanying force it took to place him under arrest. As set forth above, the Court finds that his arrest was justified and supported by probable cause. Therefore, Plaintiff has no claim for excessive force on this basis.

### D. Unlawful Search and Seizure

Plaintiff's claim for unlawful search and seizure is based on the officer's entry into his apartment prior to or in combination with his arrest. An officer is justified in entering a residence without a warrant if exigent circumstances exist. *Jones v. Lewis*, 874 F.2d 1125, 1130 (6th cir. 1989). Exigent circumstances exist under the following circumstances: (1) when officers are in hot pursuit of a fleeing suspect; (2) when a suspect represents an immediate threat to the arresting officers and public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals. *United States v. Morgan*, 743 F.2d 1158, 1162-63 (6th Cir. 1984). Officers are entitled to qualified immunity if their determination of probable cause to enter a residence is wrong, as long as it passes the test of reasonableness." *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993).

In this case, even if the decision to enter Mr. Lewis' apartment may, in retrospect, be argued to be wrong, it was reasonable under all the circumstances known to the officers at the time. The

decision cannot be second guessed based on information that has since come to light. *Fox v. DiSoto*, 489 F.3d 227 (6th Cir. 2007). As discussed in the analysis of probable cause for arrest, the officers had been told by eyewitnesses that Mr. Lewis threatened them (his neighbors) with a gun, telling them he was "gonna start firting [sic] up around here" because they had asked him to turn his music down. When the officers knocked on Mr. Lewis' door to follow up, he answered with a gun on his person. The officers acted immediately to disarm Mr. Lewis and then proceeded to handcuff him before they sat him down and made a determination regarding his arrest. This Court cannot say that it was unreasonable under these circumstances for the officers to act, in an abundance of caution, to immediately disarm Mr. Lewis in order to protect themselves and anyone else who may pass by the open door. Further, even if their decision had been wrong, Plaintiff cites no clearly controlling federal law that would have put the officers on notice that they were violating the U.S. Constitution by entering and disarming Mr. Lewis under these circumstance. Therefore, the officers are entitled to qualified immunity on this claim.

### E.  Failure to Intercede/Intervene

The Plaintiff's claim for failure to intercede or intervene is based entirely on his presupposition that his arrest was improper. As the Court has found that his arrest was proper under federal law, this claim cannot be supported.

## II. State Claims

The Defendants argue that they are entitled to statutory immunity with regard to the Plaintiff's state claims. Ohio Revised Code Chapter 2744 grants immunity to employees of political

subdivisions for actions arising out of the course and scope of their employment with the political subdivision. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 357 (1994). Specifically, the statute provides immunity unless one of the following exceptions apply:

> (1) the employee's acts or omissions were manifestly outside the scope of their employment;
>
> (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) civil liability is expressly imposed by a section of the Revised Code.

Ohio Rev. Code § 2744.03(A)(6)(a)-©.

There is no evidence that the Defendants in this case were ever acting manifestly outside the scope of their employment and there is no evidence that the officers acted maliciously, in bad faith, or in a wanton or reckless manner. Plaintiff makes a bald assertion that the Defendants Gamble, Kluth and Koch acted recklessly and in bad faith in arresting him, but he provides no evidence to support this allegation. The evidence, as discussed above, shows that the officers had sufficient evidence in the form of eyewitness testimony and the corroborating fact that Mr. Lewis was in immediate possession of a firearm to create probable cause for his arrest on a charge of aggravated menacing. Plaintiff does argue that the alleged failure to inform Mr. Lewis of the cause of his arrest violates Ohio Rev. Code Ann. §2935.07, and that he was improperly arrested for a minor misdemeanor under § 2935.26(A). The First Amended Complaint, however, does not raise a claim for violations of O.R.C. §2935.07, and although Plaintiff cites §2935.26 as the reason his arrest was unlawful under state law, this statute does not expressly create civil liability for officers who violate the section. The state claims raised in the Complaint are common law claims for false

imprisonment,[7] and intentional infliction of emotional distress which do not satisfy the third exception to the immunity statute. Therefore, the officers are entitled to statutory immunity.

Even if they were not entitled to immunity, however, the Plaintiff's state law claims would fail on the merits.

### A.  Intentional Infliction of Emotional Distress

In order to support a claim for intentional infliction of emotional distress under Ohio law, Plaintiff must present evidence that shows that: (1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was extreme and outrageous, went beyond all possible bounds of decency, and can be considered as utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure. *Gebers v. Commercial Data Ctr., Inc*, 47 F.3d 1168, 1995 WL 9262, at *3 (6th Cir. Jan. 10, 1995) (unpublished)(citing, *inter alia, Pyle v. Pyle*, 463 N.E. 2d 98 (Ohio Ct. App. 1983); *Yeager v. Local Union 20,* 6 Ohio St. 3d 369,  453 N.E. 2d 666 (Ohio 1983). The facts in this case do not support such a claim.

The Ohio Supreme Court has emphasized that liability "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

---

[7] Under Ohio law, the statutory cause of action for false imprisonment is a criminal action against a private actor who unlawfully deprives someone of their liberty under O.R.C. § 2905.03.

*Yeager,* 453 N.E.2d at 375 (quotes and citation omitted). The conduct complained of by Plaintiff is in no sense egregious enough to meet this standard. As a matter of law, a police officer cannot be liable for intentional infliction of emotional distress for the understandable distress that may accompany an arrest and all of the attendant procedures and consequences, when the arrest was lawful and was based upon probable cause, as this one has been determined to be.

Moreover, Plaintiff has not offered any evidence that he was emotionally injured, much less that his injuries were severe and debilitating. In defining serious emotional distress, the Ohio Supreme Court stated:

> By the term "serious," we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.
> . . .
> A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia.

*Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983) (citations omitted).

Plaintiff has made no claim that he has been treated for stress or any other emotional injury allegedly arising out of his arrest. Defendants are, therefore, entitled to summary judgment on this claim.

-18-

B. State law claim for False Imprisonment

According to the Ohio law a claim for false imprisonment against an officer parallels a claim for false arrest and requires a plaintiff to prove that he was unlawfully detained. *Mikes v. Kent State University*, 1990 Ohio App. LEXIS 971 (Ohio App. March 8, 1990). Plaintiff claims that his arrest in this case was unlawful because he was arrested without probable cause, and because O.R.C. §2935.26 does not authorize an arrest for a minor misdemeanor unless certain circumstances not present in this case exist.   As set forth above, the officers in this case had probable cause to arrest Mr. Lewis for aggravated menacing.  The incident sheet prepared by the officers indicates that this is one of two charges he was arrested for.   Aggravated menacing is a first degree misdemeanor and is not subject to the arrest restrictions set forth in O.R.C. §2935.26, which applies only to minor misdemeanors. *See, State of Ohio v. Hannan*, 124 Ohio Misc. 2d 37; 2003-Ohio-3923; 792 N.E.2d 1141; 2003 Ohio Misc. LEXIS 21.  Therefore, Plaintiff has provided no evidence that his arrest or imprisonment was unlawful under Ohio law.

**Conclusion**

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED. Pursuant to Fed. R. Civ. Pro. 56, Judgment is entered in favor of the Defendants on all remaining claims.  IT IS SO ORDERED.

    /s/ Donald C. Nugent  
    DONALD C. NUGENT  
    United States District Judge

DATED:   October 8, 2015